# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO DULANEY, | CV F   03-6136 SMS HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT |
| v. | |
| R. L. CANDELARIA, Warden, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge.

PROCEDURAL BACKGROUND[1]

On December 19, 2000, following jury trial in the Fresno County Superior Court, Petitioner was convicted of one count of assault with a firearm (Cal. Pen. Code[2] § 245(a)(2)) and one count of making terrorist threats (§ 422).  Further, the jury found true enhancements for use of a firearm (§ 12022.5) and prior convictions (§ 667.5(b)).  Petitioner was sentenced to state prison for a total term of six years.

Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth Appellate District.  On June 26, 2002, the Court of Appeal affirmed the judgment.

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer.

[2] All further statutory references are to the California Penal Code unless otherwise indicated.

1

1  (Respondent's Exhibit 3, attached to Answer.)

2  On August 5, 2002, Petitioner filed a petition for review with the California Supreme

3  Court. The petition was denied on September 11, 2002. (Respondent's Exhibit 4.)

4  On October 4, 2002, Petitioner filed a petition for writ of habeas corpus with the

5  California Supreme Court. The petition was denied on May 14, 2003. (Respondent's Exhibit 5.)

6  On August 31, 2003, Petitioner filed the instant federal petition for writ of habeas corpus.

7  Respondent filed an answer on April 19, 2004, arguing that the claims are procedurally defaulted.

8  Petitioner did not file a traverse.

9  On June 1, 2005, the Court directed Respondent to submit a supplemental answer

10  addressing the merits of the petition as well. Respondent filed a supplemental answer on July 25,

11  2005. Petitioner did not file a supplemental traverse.

12  <u>STATEMENT OF FACTS</u>

13  On June 11, 2000, Carolyn Walker and Ricky Thomas were at home with their four

14  children, and two of the children's cousins. (RT 358.) Earlier in the day, Petitioner and Thomas,

15  who were first cousins, had argued on the telephone. (RT 383, 385-386.) The dispute involved

16  $200 Thomas had given Petitioner for a car engine. However, Thomas had not yet received the

17  engine and wanted his money back. (RT 387-388.)

18  Later when Petitioner came to the house, Thomas went outside to see Petitioner. (RT

19  361-363.) When Thomas approached, Petitioner hit him in the face with his fist. Thomas fell to

20  the ground and Petitioner continued punching him and then began kicking him in the face.

21  Walker tried to help Thomas up from the ground, but was unable to. She screamed at Petitioner

22  to stop. (RT 364-367.)

23  Petitioner finally stopped hitting Thomas and walked over to the car he had arrived in.

24  He told a passenger in the car, "Hand me the A.K." (RT 368, 391, 396.) Petitioner told Thomas,

25  "I'll kill you, nigger." Petitioner then pointed a long black-barreled gun at Thomas who was

26  standing and backing up toward the house. (RT 368-369.) Walker got between Petitioner and

27  Thomas and screamed to Petitioner "No. No. The kids is [sic] out here." Walker screamed at the

28  children to run because she did not know if Petitioner was going to start shooting. (RT 370-371.)

1   Three of the children were outside; Walker's son and nephew ran and jumped over the
2   fence that surrounds the yard. Walker's six-year-old daughter also ran toward the fence. Walker
3   faced Thomas and had her back to Petitioner as she stood between them. Thomas looked dazed
4   and staggered; blood flowed from his nose. (RT 372.) Walker testified that she was hysterical.
5   When she turned around again Petitioner was gone. (RT 373.)

6   Walker called the police. While the officer was still at the house, Petitioner called. He
7   told Walker to tell Thomas, "[I]t's on" and to "[W]atch his back." Walker gave Thomas the
8   message. (RT 374.)

9   Thomas testified that when he heard Petitioner ask for the "A.K." he was afraid, felt his
10  life was in danger and felt threatened.[3] He was also concerned the children might be harmed.
11  (RT 391, 396.)

12                                      DISCUSSION
13  A.   Jurisdiction
14  Relief by way of a petition for writ of habeas corpus extends to a person in custody
15  pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws
16  or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor,
17  529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered
18  violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises
19  out of the Fresno County Superior Court, which is located within the jurisdiction of this Court.
20  28 U.S.C. § 2254(a); 2241(d).

21  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act
22  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its
23  enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997), *cert. denied,* 522 U.S.
24  1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting
25  Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct.

---

[3] Thomas testified equivocally on whether Petitioner had pointed a gun at him and whether Petitioner said, "I'll kill you, nigger." (RT 393, 395.) However, after the attack, Thomas told a police officer that Petitioner had done both things. (RT 407.)

1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.	Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v. Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115

4

S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

C.     Procedural Default

The instant petition for writ of habeas corpus raises the following claims for relief: (1) the trial court abused its discretion and violated Petitioner's due process rights by refusing to approve a plea agreement; (2) Petitioner's due process rights were violated because there was no physical evidence to corroborate that the victim of the terrorist threat charge was in sustained fear; (3) trial counsel was ineffective and Petitioner was denied his right to competent counsel when his *Miranda* motion was denied; and (4) the trial court violated his Fourteenth Amendment right when it failed to throw out perjured testimony and Petitioner's Sixth Amendment right was violated when counsel failed to impeach the victim.

Petitioner raised these claims via a state petition for writ of habeas corpus filed in the California Supreme Court.[4]  The Supreme Court denied the petition with a citation to In re Waltreus (1965) 62 Cal.2d 218; In re Lindley (1947) 29 Cal.2d 709; In re Swain (1949) 34 Cal.2d 300, 304; and In re Dixon (1953) 41 Cal.2d 756.  (Respondent's Exhibit 5.)

A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment.  Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 2592 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-54 (1989); See, also, Fox Film Corp. v. Muller, 296 U.S. 207, 210, 56 S.Ct. 183, 184 (1935).  A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is considered a denial of relief on independent and adequate state grounds.  Harris v. Reed, 489 U.S. 255, 260-61, 109 S.Ct. 1038, 1042 (1989).  This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32, 111 S.Ct. at 2554-55.

There are limitations as to when a federal court should invoke procedural default and

---

[4] Although Petitioner filed a petition for review to the California Supreme Court following his direct appeal, Petitioner raised only one issue in the petition; the constitutionality of California Jury Instruction No. 17.41.1, which is not raised in the instant petition. (Respondent's Exhibit 4.)

refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038,1043 (1989). For California Supreme Court decisions, this means the Court must specifically have stated that it denied relief on a procedural ground. Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594 (1991); Acosta-Huerta v. Estelle, 7 F.3d 139, 142 (9th Cir. 1993); Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1991). If the California Supreme Court denies a petitioner's claims without any comment or citation, the federal court must consider that it is a decision on the merits. Hunter v. Aispuro, 982 F.2d at 347-48.

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v. Thompson, 502 U.S. 995, 998, 112 S.Ct. 618, 620 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 857 (1991); James v. Kentucky, 466 U.S. 341, 348-51, 104 S.Ct. 1830, 1835-37 (1984). The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default. Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546 (1991); LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001).

If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice." Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750, 111 S.Ct. 2456; Park, 202 F.3d at 1150.

In Bennett v. Mueller, 322 F.3d 573 (9th Cir. 2003), the Ninth Circuit analyzed the burden

of proof in proving procedural default. It held that "[o]nce the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's." Id. at 586.

Respondent argues that this Court is procedurally barred from reviewing the claims for relief because the California Supreme Court cited In re Waltreus, 62 Cal.3d 218, 225 (1965), in denying Petitioner's state petition for writ of habeas corpus. Respondent's argument has merit. As Respondent submits, Petitioner waited until the state habeas corpus to raise the claims to the California Supreme Court instead of presenting them via a petition for review.[5] (Respondent's Exhibit 5, citing In re Waltreus, 62 Cal.2d 218, 225 (1965)[habeas corpus cannot serve as a second appeal].)

A denial and citation to In re Waltreus refers to California's procedural rule that "issues actually raised and rejected on appeal cannot be renewed in a petition for writ of habeas corpus." Forrest v. Vasquez, 75 F.3d 562, 563 (9th Cir. 1996), *quoting,* In re Harris, 5 Cal.4th 813, 829 (1993). In Ylst v. Nunnemaker, the Court concluded that a Waltreus citation is neither a ruling on the merits nor a denial on procedural grounds thereby having no bearing on a petitioner's ability to raise a claim in federal court. Ylst v. Nunnemaker, 501 U.S. 797, 805, 111 S.Ct. 2590, 2595 (1991). Thus, federal courts must "look through" the petition to the state court's prior decision and determine the grounds for the prior denial. Id. at 803, 806, 111 S.Ct. at 2594, 1296; Forrest v. Vasquez, 75 F.3d 562, 563-64 (9th Cir. 1996).

However, if a claim was raised on direct appeal but not in a petition for review to the California Supreme Court, the court need not "look through" a denial because a citation to In re Waltreus indicates a procedural bar to bringing the claim in federal court. Forrest, 75 F.3d a,

---

[5] As previously stated, although Petitioner filed a petition for review on August 5, 2002, Petitioner raised only one issue in the petition, the constitutionality of California Jury Instruction No. 17.41.1, which is not raised in the instant petition. (Respondent's Exhibit 4.)

1  563-64. The Ninth Circuit has reasoned that in these circumstances, the procedural bar results
2  not from the violation of the In re Waltreus rule barring claims raised and rejected on appeal, but
3  from the failure to follow Rule 28(b) of the California Rules of Court (prescribing the time for
4  filing for review by the California Supreme Court). Id. Rule 28(b) of the California Rules of
5  Court is independent of the federal question and adequate to support the judgment. Id. Because
6  Petitioner did not comply with Rule 28(b) of the California Rules of Court by raising his claims
7  in a petition for review, this Court is barred from reviewing Petitioner's claims.

8  Further, In re Dixon bars federal review where the claimed errors could have been, but
9  were not raised in a habeas petition on direct appeal from conviction. Dixon, 264 P.2d at 515.
10 In In re Lindley, the California Supreme Court held that it will not consider the merits of
11 sufficiency of the evidence claims in a state habeas corpus petition. Rather, the claim must be
12 raised in direct appeal. In re Lindley, 29 Cal.2d at 721-724. The Ninth Circuit has held this is an
13 independent and adequate procedural bar. Carter v. Guirbino, 385 F.3d 1194, 1197-1198 (9th Cir.
14 2004). In re Swain articulates the procedural requirements that a California habeas petitioner
15 allege with particularity the facts supporting his claims and explain and justify the delay in the
16 presentation of the claims. In re Swain, 34 Cal.2d 300, 304, 209 P.2d 793 (1949). The Ninth
17 Circuit has held that an In re Swain citation is a denial on procedural grounds, because such a
18 deficiency, when it exists, can be cured in a renewed petition. Kim v. Villalobos, 799 F.2d 1317,
19 1319 (9th Cir. 1986); Harris v. Superior Court, 500 F.2d 1124, 1128, (9th Cir. 1974).

20 Therefore, all four citations, independent of one another, provide a sufficient basis for
21 procedural bar. But Cf. Koerner v. Grigas, 328 F.3d 1039, 1052 (9th Cir. 2003)(finding that
22 where a state court decision affords no basis for choosing between a state law ground that would
23 bar federal review, and one that would not, that decision cannot bar federal review.)

24 Petitioner did not file a traverse and has therefore made not showing of cause and
25 prejudice or that a miscarriage of justice will result from the failure to review the petition.
26 Accordingly, the claims are procedurally defaulted. Nonetheless, even if the Court were to
27 review the petition, it must be denied as there is no merit to Petitioner's claims.
28 D.     Due Process - Trial Court's Refusal to Approve Plea Agreement

Petitioner contends that his due process rights were violated by the trial court's refusal to accept the plea bargain tendered after the jury was selected.

As Respondent submits in its supplemental answer, on October 2, 2000, before the start of the trial, the prosecutor offered to allow Petitioner to plead guilty to a charge of violation of section 422, criminal threats. The court's indicated sentence was 16 months in state prison to be served concurrent with a parole violation Petitioner faced. (RT 326.)

The parties discussed Petitioner's potential sentence if convicted, and the court told Petitioner he faced up to 15 years in state prison. Petitioner rejected the offer. (RT 326.) The court made clear to Petitioner the terms of the proposed plea bargain and indicated sentence:

> When we get started with this jury, all these offers are off the table. Whatever happens, happens. If what you hope happens, that you're found not guilty occurs, then you will be walking out of here. At least, whatever happens at parole will happen. But there's no going back to taking the deal or anything like that.

(RT 334.)

Two days later, on October 4, 2000, after the jury was selected and sworn, the following exchange took place:

> [THE COURT]: Counsel, I think we should go on the record with some discussion we have had here in the last few minutes in which you, apparently, [counsel], have indicated to the Court that [Petitioner] has changed his mind and now wants to accept what was the People's offer of pleading to a 422, and the Court's indicated of a no initial state prison. Is that right?
> [DEFENSE COUNSEL]: That is my understanding, yes.
> [THE COURT]: And I indicated to you, consistent with what I told [Petitioner] when I got started here, I am not going to do that. I told him all offers are off the table once this jury got started and I selected a jury in this case. And that is my position. And as I understand it, the People now want to offer a 422 to [Petitioner] and indicate no initial state prison?
> [THE PROSECUTOR]: Yes.
> [THE COURT]: And I guess since the People did not offer [Petitioner] no initial state prison in the first place, is there something changed in the case since you were assigned here for trial, Counsel?
> [THE PROSECUTOR]: . . . [Y]ou can say that my contact with the witnesses have [sic] caused me some concern, which may impact the result in this case.

(RT 351-352.)

Respondent contends the claim is not cognizable as it does not present a federal question. Respondent's contention has merit.

9

The United States Supreme Court has held, "there is no constitutional right to plea bargain." Weatherford v. Bursey, 429 U.S. 545, 561 (1977); see United States v. Osif, 789 F.2d 1404, 1405 (9th Cir. 1986). As the Supreme Court later stated, "[a] plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of the court, does not deprive an accused of liberty or any other constitutionally protected interest. [Fn.]" Mabry v. Johnson, 467 U.S. 504, 507 (1984); see also McKenzie v. Risley, 842 F.2d 1525, 1536 (9th Cir. 1988)(defendants have no constitutional right to plead guilty to lesser crimes than those charged or to avoid trial).

To the extent Petitioner argues that the trial court's denial of the plea agreement amounted to a violation of his due process rights, it is without merit. The belated plea bargain was not accepted by the trial court, and it was therefore merely an executory agreement with no constitutionally protected interest.

Further, the trial court articulated its reason for rejecting the plea of which Petitioner was made fully aware. Petitioner had advance notice that after the jury was selected, all offers would no longer be valid or accepted and Petitioner was aware of and agreed to it. (RT 334.)

Petitioner raised the instant claim to the Court of Appeal on direct appeal which held in part as follows:

> At the time of [Petitioner's] trial, Superior Court of Fresno County, Local Rules, rule 14.5, provided as follows:
>
> C. In the event the case is not disposed of at trial confirmation, and the case is confirmed as ready to proceed to trial, all offers on either side are deemed withdrawn and the case will proceed to trial on all counts as charged. Any other proposed disposition of the case by way of plea thereafter shall only be on approval of the court. (Effective 7/1/2000).
>
> That the trial court here extended the deadline to the commencement of jury selection only inured to [Petitioner's] benefit. The court's refusal to extend this deadline further cannot be said to be unreasonable, since as this court has noted, "[O]ne exception would lead to another, 'with the result that the deadline would become meaningless.' [Citation]."

(Respondent's Exhibit 3, at 5.)

The state courts' determination of this issue was not contrary to, or an unreasonable

application of, clearly established Supreme Court precedent. Accordingly, Petitioner's claim fails on the merits.

E.     Due Process - No Physical Evidence to Support Finding of Terrorist Threat Charge

Petitioner contends that insufficient evidence supports his conviction for making a criminal threat (§ 422) as alleged in count two of the information. Petitioner claims that there is insufficient evidence demonstrating the victim's fear was a "sustained fear," i.e., a fear lasting beyond the moment of the threat as required under section 422.

The law on insufficiency of the evidence claim is clearly established. The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim on habeas, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

In rejecting Petitioner's claim on direct appeal, the Court of Appeal held:

> The statute [§ 422] does not define the element of "sustained fear," but in *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156, the court stated that "sustained" meant a period of time beyond what is momentary, fleeting, or transitory. The court also found the parties' history relevant to the inquiry. In Allen, the defendant threatened to kill the victim and her daughter while pointing a gun at the victim. The victim telephoned the police, who arrested the defendant about 15 minutes later. (*Id*. at p. 1153.) The defendant conceded that because the police promptly arrested him, there was no showing the victim experienced the sustained fear required by section 422. The court held that 15 minutes of fear of a defendant who is "armed, mobile, and at large," and who has threatened to kill the victim and her daughter, is more than sufficient to satisfy the statutory element of sustained fear." (*Id*. at p. 1156.)
> Here, similarly, from the time [Petitioner] threatened to kill Thomas until the police arrived, [Petitioner] was "armed, mobile, and at large." Moreover, Thomas did not immediately know of the police's arrival. In view of these circumstances, as well as the physical and psychological trauma that Thomas had suffered up to that point, the jury could reasonably have concluded that the fear endured for a substantial period of time and was thus more than fleeting or momentary.

(Respondent's Exhibit 3, at 8.)

The state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. The Court of Appeal used the appropriate standard of review and reasonably held that the record supported a reasonable

11

inference that the victim suffered a "sustained fear" within the meaning of section 422. As stated by the Court of Appeal, from the time Petitioner threatened the victim until the police arrived, Petitioner was "armed, mobile, and at large." (Respondent's Exhibit 3, at 8.) Moreover, the victim did not immediately know of the police's arrival. (RT 373-377, 391-393, 396, 400.) As Respondent submits, in light of this evidence, and evidence of the victim's physical and psychological trauma, the jury could have reasonably concluded that the victim endured fear for a substantial period of time that was more than momentary or fleeting. Petitioner's claim is without merit.

F.    Ineffective Assistance Counsel/Denial of Marsden Motion

Petitioner contends that trial counsel rendered ineffective assistance and he was denied the right to competent counsel when his Marsden motion was denied.

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential. A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694.

Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable. Strickland, 466 U.S. at 688. The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness. Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984). Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984). Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000). Weighall v. Middle, 215 F.3d 1058, 1062 (2000).

First, as Respondent submits, Petitioner's allegations regarding the ineffectiveness of his trial counsel are conclusory in nature. On the form petition, Petitioner merely alleges that the trial court held a closed door hearing and that trial counsel failed to file a motion to suppress and interview witnesses. (Petition, at 6.) Petitioner cites Exhibit C, attached to his petition in support of his claim. Exhibit C, is merely a portion of the transcript of the trial court's October 2, 2000, hearing and does not provide further elaboration on Petitioner's claim. The claim presented in the petition does not provide specific factual allegations that counsel was ineffective. Conclusory allegations do not warrant habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief).

To the extent Petitioner is attempting to assert the same grounds as those raised at the October 2, 2000, hearing at the trial court, the claim must be denied. The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and therefore is properly considered in a habeas proceeding. Bland v. California Dep't of Corrections, 20 F.3d

1469, 1475 (9th Cir. 1994), *cert. denied*, 513 U.S. 947, 115 S.Ct. 357 (1994), *overruled on other grounds by* Schell v. Witek, 218 F.3d 1017 (9th Cir.2000).  It is well settled that when a criminal defendant voices a seemingly substantial complaint about counsel, the trial judge should make a thorough inquiry into the reasons for the defendant's dissatisfaction. See id. at 1475-76; United States v. Robinson, 913 F.2d 712, 716 (9th Cir.1990).  The Sixth Amendment, however, guarantees effective assistance of counsel, not a "meaningful relationship" between an accused and his counsel. See, Morris v. Slappy, 461 U.S. 1, 14, 103 S.Ct. 1610 (1983).   The ultimate inquiry in a federal habeas proceeding is whether the petitioner's Sixth Amendment right to counsel was violated. Schell v. Witek, 218 F.3d 1017, 1024-25 (9th Cir.2000) (*en banc*).  The habeas court considers whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Id. at 1026.

Despite the fact that Petitioner had not filed a Marsden[6] motion, the trial court conducted a full hearing regarding Petitioner's complaints.  During the closed hearing Petitioner complained he felt as if counsel was not assisting him, i.e., he was "being dumped" because she had not filed a motion to suppress the evidence and she had not contacted his witnesses.  (RT 330.)  The trial court did all that was constitutionally required,  and Petitioner has not shown that the trial court's denial of his motion to substitute counsel was contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

With regard to Petitioner's claim that counsel failed to file a motion to suppress, the trial court patiently explained to Petitioner that the prosecutor was not going to admit the gun into evidence because it was never seized in the case.  Thus, the court told Petitioner his attorney could not bring a motion to suppress something that did not exist.  The court added, "Your

---

[6] As the trial court stated, "I don't see there has been a Marsden motion requested in this case, and I'm not suggesting that you're wanting to make one." (RT 329, *see* RT 333 [trial court notes Petitioner did not make Marsden motion, he only complained that defense counsel in some way acted incompetently].)

lawyer can't file a motion to suppress something that is not coming in in the trial." (RT 330.)

With regard to Petitioner's claim that defense counsel had not contacted certain witnesses, defense counsel explained to the court the following:

> [DEFENSE COUNSEL]: I had Don Slade from our office serve Ms. Young and attempt to serve Sherry Taylor, who was the mother of the minor Donald Walters. My investigator was unable to speak directly with Ms. Taylor, so I have - - what he finally did was just leave a copy of the subpoena on the front of the door. So I have no legal service on that. We have made several attempts.
> I did personally speak with Ms. Taylor, who was in court on Thursday without her son being present. And she personally told me that she would make sure that the son would get to court. And I made arrangements for her to be available by phone this morning. I attempted to call over my lunch hour and was not able to reach her. I reached another son who is going to try to contact her. That is what I did in terms of another witness. I do not see his testimony as crucial to my client's case.
> [THE COURT]: This would be Donald Walters you're talking about?
> [DEFENSE COUNSEL]: Right. And I have not made my mind up as to whether I would use him or Ms. Young. But I did attempt to subpoena them so they would be available.

(RT 331-332.)

Thereafter, the court told defense counsel that her conduct was "absolutely reasonable." (RT 332.) The court added, "it makes no sense to file a motion to suppress something that does not exist." (RT 332.) The court made a specific finding that counsel had not acted incompetently, adding, "There is no evidence to support a conclusion that [defense counsel] ha[s] acted anything but competently in [Petitioner's] defense." (RT 333.)

Here, despite the trial court's finding that no Marsden motion had been filed, the court made a detailed inquiry into Petitioner's complaints after allowing him a full opportunity to air out his grievances. The court told Petitioner that his attorney's decision not to file a motion to suppress evidence was reasonable given there was no gun seized in the case, and hence no evidence to suppress. (RT 330.) Moreover, defense counsel explained she had contacted and attempted to personally serve defense witnesses. (RT 332.) The court made a finding defense counsel was providing adequate representation, i.e., counsel's conduct was "absolutely reasonable." (RT 332-333.) The trial court's ruling was reasonable and further inquiry was not required. See King v. Rowland, 977 F.2d 1354, 1357 (9th Cir. 1992). The judge conducted all the inquiry that was necessary under the circumstances.

Further, Petitioner has made no showing and the record does not reveal that there was a total breakdown in communication or an irreconcilable conflict between Petitioner and counsel. Accordingly, the state courts' determination was neither contrary to, nor involved an unreasonable application of Supreme Court authority.  28 U.S.C. § 2254(d)(1).

G.       Due Process Violation - Trial Court's Failure to Exclude Perjured Testimony

Petitioner contends that his federal constitutional right to due process under the Fourteenth Amendment was violated when the trial court "fail[ed] to throw out perjured testimony", and his trial attorney failed to impeach a witness in violation of his Sixth Amendment right.

Respondent contends that Petitioner's claims are conclusory in nature and devoid of sufficient factual support, and are therefore subject to dismissal.  The Court has reviewed the petition and finds that Respondent's contention has merit.

On the form petition, Petitioner merely claims that perjured testimony was admitted in that the victim claimed not to recall the circumstances surrounding the crime during the preliminary hearing.  Thereafter, in the next sentence, Petitioner asserts the victim was compelled to come to court by issuance of a body attachment. (Petition, at 6.)  As Respondent submits, Petitioner does not explain what evidence he considered to be perjured testimony, and the Court cannot surmise the import of Petitioner's allegation that the trial court "fail[ed] to throw out perjured testimony."[7]  Conclusory allegations do not warrant habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief).  Accordingly, Petitioner is not entitled to relief.

///////
///////
///////
///////

---

[7] It does not appear that Petitioner ever challenged the fact that perjured testimony was used to support his conviction.

## ORDER

Based on the foregoing, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus be DENIED; and
2. The Clerk of Court is directed to enter judgment in favor of Respondent.

IT IS SO ORDERED.

**Dated:   November 21, 2005**                            **/s/ Sandra M. Snyder**
icido3                                                                   UNITED STATES MAGISTRATE JUDGE